## DYKE v. WHYTE.

1. EXEMPTION FROM TAXATION.—A certain parcel of land, nearly three hundred acres, was entered and paid for as a placer mining claim and was described in the government patent as a mineral entry; said land or a part thereof was within a few months after the issuance of the patent made a subdivision of the city of Leadville, a map or plat thereof being filed in the recorder's office, showing its division into blocks and lots; and there was no evidence showing that the part so platted ever bore or produced any gold or silver or other precious metals; *held*, that these circumstances clearly indicated that, whatever may have been the character of the entry, or of the land originally, it was not exempt from taxation as a mine or mining claim " bearing gold or silver or other precious metals."

2. TAX DEED TO COUNTY; FORM AND EFFECT OF.—A tax deed issued to the county in pursuance of the acts of 1879 and 1885, when in appropriate form and properly executed and recorded, conveys to the county as good title as is conveyed by a similar deed to a cash purchaser under like circumstances. The form of deed prescribed for cash purchasers should be substantially followed as far as its terms are applicable to the county as a bidder, and be varied only so far as may be necessary to show the truth of the transaction in substance.

3. ACTION BARRED BY OUTSTANDING TITLE.—In a civil action under the code in the nature of ejectment, a recovery by the plaintiff is as effectually barred by proof of a valid outstanding title in a third party as by showing title in the defendant.

*Appeal from District Court of Lake County.*

ACTION by original owner to recover land sold for taxes. Trial by the court without a jury; finding and judgment in favor of defendant. Plaintiff appeals. ·  •

Mr. S. J. HANNA, for appellant.

Mr. A. F. GUNNELL, for appellee.

Mr. A. S. BLAKE and Mr. J. S. JONES, *amicus curiæ.*

Mr. JUSTICE ELLIOTT delivered the opinion of the court.

This is a civil action in the nature of ejectment. The plaintiff Dyke claims title as owner in fee of the premises through sundry mesne conveyances from the United States. The defendant Whyte claims by virtue of a sale of the premises for taxes. There is no controversy as to the original validity of the plaintiff's title. The issue of the case turns. upon the effect to be given to certain deeds and other documentary evidence produced by the parties respectively.

Two principal objections are urged against the validity of the tax title relied upon by defendant; *first*, that the property in controversy was not subject to taxation for the year 1880; *second*, that if the property was subject to taxation the proceedings under the revenue laws of the state, as shown by the evidence, were not effectual to divest the plaintiff of his title.

1. Was the land subject to taxation for the year 1880? The plaintiff in his complaint describes the land as follows: " Lot numbered one (1) in block numbered four (4) in Stevens' and Leiter's subdivision of the city of Leadville, being a part and portion of U. S. survey No. 271, situated in the county of Lake, and state of Colorado." The United States patent introduced in evidence by plaintiff shows, *inter alia*, that the land of which the lot in controversy forms a part, was entered and paid for in July, 1878, by Stevens & Leiter, as their placer mining claim, being mineral entry No. 154 in series of United States land office at Fairplay, Colorado, designated by the surveyor general of Colorado as survey No. 271, embracing a portion of the unsurveyed public domain in California mining district, Lake county, Colorado, containing $298\frac{33}{100}$ acres. The patent bears date Nov. 5, 1878.

There was also introduced in evidence a deed of general warranty dated February 27, 1879, by Stevens & Leiter conveying the lot in controversy to one Frank Koebrich, and describing the same as " Lot one (1) in block four (4) in Stevens' & Leiter's subdivision," etc., and referring to "a map of said subdivision being filed in the recorder's office of said

Lake county, Colorado." There was also read in evidence a deed of general warranty by said Koebrich, conveying said lot to the plaintiff.

Upon this evidence it is claimed that the lot was not subject to taxation for the year 1880, basing the claim upon the provision of the state constitution, art. 10, sec. 3, exempting from taxation " mines and mining claims bearing gold, silver and other precious metals " for a period of ten years from the adoption of the constitution.

There was no evidence showing that the lot in controversy was in fact a mine or mining claim or a part thereof, or that a mine or mining claim was located in whole or in part upon or within said lot; nor was there any evidence that said lot during the year 1880, or at any time, bore or produced any gold or silver or other precious metals. It is true, the patent recites that the whole premises described therein, nearly three hundred acres, were entered and paid for as a placer mining claim, and that the same was a mineral entry. But the evidence also shows that the land thus patented or a part thereof, including the lot in controversy, was within a few months after the issuance of the patent made a subdivision of the city of Leadville, a map of such subdivision, showing its division into blocks and lots, being filed in the recorder's office of the proper county. These circumstances clearly indicate that whatever may have been the character of the entry or of the land originally, the lot in controversy certainly was not, during the year 1880, exempt from taxation as a mine or mining claim " bearing gold or silver or other precious metals." Claims of exemption from taxation are to be carefully scrutinized. See *Commissioners v. Colo. Seminary*, 12 Colo. 497, and authorities there cited.

2. The defendant introduced in evidence two deeds; the first, to show that plaintiff had been divested of his title in pursuance of the revenue laws of the state; the second, to show that he, the defendant, has acquired the title.

The first of these deeds, commonly called a tax deed, was executed by the county treasurer of Lake county to the

county of Lake, its successors and assigns. The deed describes the property in controversy and recites, among other things, that the same was subject to taxation for the year 1880, and that at the regular tax sale held in said county, in May, 1881, the property was bid off for said county by the treasurer for the amount of the taxes of 1880 and the interest and costs thereon. See act concerning " Assessment and Collection of Revenue," approved March 20, 1877, Gen. Laws, p. 741 ; also, amendment thereto, Session Laws, 1879, p. 155 ; also, further amendment, Session Laws, 1885, p. 323.

The second deed is an ordinary quit-claim deed executed by the county of Lake to the defendant Whyte. A certified copy of the records of the proceedings of the board of county commissioners of Lake county was also introduced in evidence, showing that said second deed was executed for a valuable consideration in pursuance of a resolution duly passed by said board.

At the time of the sale, May, 1881, the act of 1879 amendatory of the revenue act of 1877, cited above, authorized the county treasurer at tax sales, under certain circumstances, to bid off property for the county and to issue to the county a certificate of purchase therefor, as required in case of other purchasers. The statute, however, did not then authorize the treasurer to execute a deed to the county for the property so purchased. But by a further amendment in 1885 this omission was supplied ; so that when the treasurer's deed first above mentioned was executed, the treasurer had statutory authority for its execution and delivery, the same as in case of other purchasers. Session Laws, 1885, p. 323.

The difference between the rights and privileges of a cash purchaser and the duties of the treasurer as a bidder for the county at a tax sale under the statute, is quite manifest.

The treasurer is authorized to sell for cash only so much of each parcel of land as shall be sufficient to pay the taxes and charges thereon including all costs and penalties ; but when it shall become the treasurer's duty to bid off any parcel of land for the county, he is authorized to bid off the

whole parcel for the amount of the taxes, interest and costs thereon.

The cash purchaser may buy the first time the land is offered for sale. But the treasurer cannot lawfully bid off the property for the county on the first day it is offered. The land must be offered without any bidder on the first day, and re-offered on the succeeding day or days without any bidder therefor, and until the treasurer becomes satisfied that the same cannot be sold at such sale, before it can be lawfully bid off by the treasurer for the county. The statute will not uphold a county in taking the whole of any parcel of land for the non-payment of the delinquent taxes thereon, except in a case where, after allowing full opportunity to cash purchasers, the amount of the taxes and other charges cannot be realized. A cash purchaser may be satisfied to take a part of the land for the amount of the taxes and charges. The law does not wantonly allow the whole of a debtor's estate to be sacrificed when a part may suffice. 2 Mills' Ann. Stats., secs. 3888, 3894.

The original revenue act of 1877, *supra*, prescribes what shall be the form " substantially " of a tax deed to cash purchasers ; it provides how such deed shall be signed, attested, acknowledged and recorded, and, also, specifies the estate which shall vest in the purchaser when the deed is substantially thus executed and recorded. See Mills' Ann. Stats. secs. 3901, 3902. Comparing these sections with other provisions of the act, it is apparent that it was the intention of the legislature to provide that when a duly executed and recorded tax deed shall show, that the statutory requirements for the assessment and collection of taxes have been substantially complied with, the deed shall be, *prima facie* evidence of title to the property thereby conveyed in favor of the purchaser, his heirs and assigns, as against the former owner.

The amendatory act of 1885, *supra*, provides that a county shall be entitled to a deed for any land bid off for it at a tax sale under the same circumstances and upon the same terms and conditions as cash purchasers ; and, though the form of deed to the county is not prescribed in the amendatory act,

yet from the terms of the amendment there can be no doubt it was intended that such deed, when in appropriate form and when properly executed and recorded, should convey to the county as good title as is conveyed by a similar deed to a cash purchaser under like circumstances.  The form prescribed for cash purchases was doubtless deemed a sufficient and appropriate guide to be substantially followed as far as its terms are applicable to the county as a bidder, and to be varied only so far as may be necessary to show the truth of the transaction in substance.  If such deed were to contain recitals showing that the terms of the statute in respect to the county as a bidder or otherwise were not complied with, it would not be a valid deed.  *Lebanon Mining Co. v. Rogers*, 8 Colo. 37 ; *Magill v. Martin*, 14 Kans. 80 ; *Cooley on Taxation*, 355.

The treasurer's deed in the case before us follows the prescribed form so far as the same is applicable to the circumstances of the case ; it also contains specific recitals showing substantial compliance with the statute in respect to bidding off the property by the treasurer for the county.  Moreover, it is executed, attested, acknowledged and recorded as the statute provides.  It must, therefore, in the absence of testimony impeaching its validity, be held to have conveyed the title of the former owner to Lake County.

The plaintiff offered no evidence whatever in rebuttal, and no evidence of any character to impeach the validity of the treasurer's deed to the county, except as the patent and deeds introduced in chief were relied on to show that the land was not subject to taxation.  These, as we have seen, were not sufficient for that purpose.

It is unnecessary to consider the character and effect of the deed from the county to the defendant, or of the resolution authorizing it, as in an action of this kind a recovery by the plaintiff is as effectually barred by proof of a valid outstanding title in a third party as by showing title in the defendant.  The judgment of the district court must accordingly be affirmed.

*Affirmed.*